Could the clerk call the next case please? Mr. Munoz, good morning. Good morning. Would you come to the... You may proceed. Thank you. May it please the court, counsel, judge in this matter. Obviously the court's read the briefs in this matter and may I forego recitation of the facts to get to the issues? Yes. In this case, first of all, our first issue is whether the trial court erred in denying the motion to quash arrest and suppress evidence. A judicial finding is not against the manifest weight of the evidence unless, from the record, an opposite conclusion is clearly evident. That's from People v. Bafia. In this matter, the trial court's denial of the motion to quash arrest and suppress evidence was against the manifest weight of the evidence. There was almost no usable evidence that the court had that the defendant was under the influence of alcohol. In this case, the trooper admitted that my client was confused due to language issues and cemented that conclusion when the trooper testified that the defendant understood the gist of what was going on. The trooper did not say the defendant understood or that he was faking it or that he had... that the defendant spoke English the whole time. The trooper, in fact, may have mentioned that the defendant's speech was accented. He also made a comment that it was slurred, but the defendant never said more than a yes or a no. So how that could have been slurred, I have no idea. And even what was heard in the video couldn't even tell most of the time what the defendant was saying because his speech was so soft. So certainly there was a language barrier, and in fact, it seems that the state agrees that there was a language barrier. And I say that because it was not refuted in their brief, and even at the initial hearing on the summary suspension hearing, the state didn't refute my client's language barrier at all. When the state was given their chance to present evidence, they presented none. And I would suggest to the court, there was a language barrier, and because of that, I would suggest that this turned into an English test. Not a field sobriety test, not a DUI investigation, but an English test. Didn't the officer demonstrate the various tests to the defendant? Yes, he did demonstrate the walk and turn test and the one leg stand test. And if I recall correctly, the walk and turn test, the officer did not demonstrate it on the line. However, he did demonstrate it, and my client, I think, very obviously did not understand that he had to take nine steps. Henceforth, he took 38 and kept on going. And then when the officers told him to turn around, he turned around. So basically, he understood very basic amounts. He saw the demonstration, and the officer did not demonstrate nine steps. So my client just did what he saw, did what he sort of understood. And that's why I say it turned into an English test. And in this matter, he failed the English test. Did he fail the field sobriety test? Well, when he was walking around, talking to the officer, he had no problems walking. He had no problem balancing. In fact, during the horizontal base nystagmus test, my client was taking that test. He stood still. I asked the officer, the officer was asked, was he swaying during the test? I can't recall. And it looked as though my client performed that test fine without any balance problems. The officer certainly says he failed the HDO test, but that's just whether there's a presence of alcohol, which my client already admitted that he had had some alcohol earlier. So that doesn't actually bolster my client's credibility. And then the other officer's observations were bloodshot glassy eyes, and honestly, at 3.49 in the morning when my client had been up since 6 a.m. the day before, I think bloodshot glassy eyes would be expected. That's not an observation of somebody being under the influence of alcohol. It's just of somebody being tired. And in this case, we don't have anything else. The judge at the summer suspension hearing, in fact, commented that Mr. Estrella took a few too many steps, but the 30 that he took were really good. And, in fact, my client stayed on the line the whole time, did not step off the line, wasn't swaying, wasn't staggering. And although the officer says he stopped, used his arms, used his arms, the officer can't tell us when he did that, can't tell us when he misheeled a toe, can't tell us how often he used his arms, can't tell us anything about it. And I would suggest to the court that my client's balance, the real issues here were good. And the one-leg stand test, my client, again, the officer says, I put his foot down a few times, can't tell us when, but my client finishes the test. The officer didn't stop the test, my client finishes the test. Those are 30 seconds. And the state presented no additional evidence. This was a stipulated, the motion to express was stipulated from the summer suspension hearing. And the interesting thing there is that the end of the petitioner's case, defendant's case, on the summer suspension hearing, statement of motion for directed finding was denied. And at that point, the state put on no evidence. So this is what the stipulation was to the trial court on the motion to express. And at that point, the only thing the court could say was different judges can differ in their opinions, is essentially what Judge Lund said in that matter. And we would, based on that, sorry. There was a different judge at the summer suspension hearing. Correct. Judge Rickman heard the summer suspension hearing, Judge Lund heard the motion to express. And based on the evidence, which both judges, Judge Rickman heard all the evidence live, Judge Lund did it by stipulation and saw the video evidence. So otherwise, it was the same exact evidence. So based on that, we're asking the court to reverse the court's denial of the motion to express evidence. Because it was against the manifesto of the evidence that the court did not grant the motion to express. After the motion to express was denied, we did proceed to a bench trial in front of Judge Lund. He found my client guilty of the DUI. And we would suggest to this court that there was not sufficient evidence for a rational trial fact to find my client guilty of the DUI. Essentially, my previous argument comes into play here, and I would add to this. At the trial, there's a lot of talk about a damaged guardrail, a damaged SUV that my client was driving. And interestingly enough, the guardrail we're talking about was on the left side of the exit ramp coming from I-55. The damage to my client's vehicle was on the right side of his vehicle. So there was no damage to his front, no damage to the driver's side of his vehicle. It was on the right side, as the trooper testified to, as the defendant testified to. And the tire that was being changed was on the passenger side of the vehicle. And my client had an explanation for it, that he ran over something in the roadway, pulled over to change the tire. There was no evidence whatsoever that my client was actually hit the guardrail. No evidence that it was him. No evidence that there was paint transfer. There was no accident reconstruction. So the state cannot even make any causal connection between a damaged guardrail and my client's damaged vehicle. And certainly any anecdotal evidence of that just doesn't make any sense. The only way that could have happened was my client to drive in reverse to have hit the guardrail on that side. Because there's no evidence that there was a spin, no evidence that there was any kind of way he could have hit the guardrail on his right side of the vehicle, and the guardrail's on the left. There's just none there. So I would suggest to the court that evidence of an accident, there was none. And we don't know when the damage to the SUV occurred. It was never asked. Otherwise, the other evidence that I was speaking about earlier on the motion to express existed here. Again, no balance issues on the horizontal gaze nystagmus test. And the officer, again, he saw the video in court and still couldn't tell us whether the defendant was swaying during the horizontal gaze nystagmus test. That's hard to believe, honestly. And on the walk and turn test, the officer says, well, he did too many steps. Well, we understand that. We're suggesting it was a language barrier, a language issue. That's why. And my client testified that. He only understands English a little bit. And otherwise, we don't have any evidence of bad driving. We have no evidence of bad driving. And so now we look at what we can look at that the language would not affect on the field sobriety test, such as balance, such as my client's walking in the area. And the officer never says that my client staggered or stumbled, didn't have any balance problems during the horizontal gaze nystagmus test. And on the walk and turn test, the officer says, well, he used his arms, he stepped off a line, but doesn't tell us when he used his arms, when he stepped off a line. How many times did he do that? The proof is in the details here. If there is no details, if the officer is unsure, there is no way a court can be sure. And the officer basically said, I don't recall, I'm not sure. And I think that is extremely instructive here regarding whether there was sufficient evidence to find my client guilty of driving under the influence of alcohol. Again, as I mentioned earlier, bloodshot glassy eyes, we believe it's common sense that he would be tired at that point in the night. It's almost 4 in the morning. He'd been up 22 hours. I think it would be common that a person would have bloodshot glassy eyes at that point in time. So we are asking the court to reverse the court's finding of guilty because there was not sufficient evidence. And lastly, I know I put it in my brief regarding the collateral estoppel effect from the summary suspension hearing to the motion to express. And I understand the court's ruling, Supreme Court rulings, that usually there is not collateral estoppel effect from a summary suspension hearing to a motion to express on a DUI case. Certainly, People v. Moore, Hurlburt, and various other cases have certainly instructed us to that. But it seems that the reasoning for that may be faulty. Because essentially, these summary suspension hearings are not summary in nature anymore. When we're in court, the state presents evidence nearly every time. The officer, PGOs, even lay witnesses. So that's not unusual that that happens. Hall of Famer sworn reports used? Seldom. And certainly they're allowed to do that. And in our case, the summary suspension hearing was actually more rigorous than the motion to express. Because the motion to express was stipulated. And the people who testified at the summary suspension hearing were exactly the same people who testified at the trial. It was exactly the same video that was at trial. So again, we're suggesting that the summary suspension hearing is a contested hearing. And although the Moore's Court's reasoning was that the practical effect, if they were to allow a preclusive effect from a summary suspension hearing to a motion to express in a DUI case, they're saying the practical effect would be that the state or municipality could not rely on the sworn report at the proceedings, but rather would be required to have the arresting officer and other witnesses testify. The goal of conducting swift hearings for the sole purpose of determining whether a court has sufficient reason to rescind the summary suspension of a motorist's driving privileges will be thwarted. Counsel, two minutes. Thank you. Our suggestion is that the state can always rely on the sworn report. If they do that, there would be no preclusive effect. Simple as that. If they are going to present evidence, then there should be preclusive effect. Collateral estoppel is basically a judicial remedy so issues do not get re-litigated over and over again. And we're suggesting it is a good remedy that provides justice. I think the common people, the people that we all serve, you know, understand that logic. But when we have to re-litigate issues, it's difficult as a practitioner to explain to somebody that the hearing we just did on summary suspension has no effect on anything else. There's no understanding there. And I would think that if we applied collateral estoppel to hearings that have live testimony, live evidence, that there is no prejudice and justice would prevail. As in this case, I think this case is an example of justice not prevailing. You have a summary suspension granted for no reasonable grounds to arrest, and then a motion is expressed, denied, saying there's probable cause to arrest. When probable cause and reasonable grounds are synonymous, it seems like all the appellate courts have agreed on that. Supreme Court's agreed on that. If that's the case, and the state was proving to this case, and the summary suspension was a final order, collateral estoppel certainly should be applied here and should be applied, which is carving out the area of saying on a summary suspension hearing, when there's live witnesses, this is going to have preclusive effect. Otherwise, it doesn't. It doesn't stop the state from using sworn reports. And I think justice is better served in that way. We would ask for the court to reverse the court's findings on the motion expressed for the reasons we've stated, as well as reverse the court's finding of guilty for the reasons I've stated. Thank you. I have one question. If there hadn't been a stipulation regarding the evidence from the summary suspension hearing, and so then there would be the requirement again for all the live testimony. I mean, you're saying that if you have live testimony, then that is, then you have to put, if you start with any live testimony really, then you're going to have to say, okay, now we're going to put everything on in this context. I mean, is that, because I guess I see exactly what you're saying, but I also see that in the summary suspension hearing, you know, they can use the officer's sworn reports, but they may, maybe there's two troopers, and they only have the live testimony of one, and then say, well, now we want to bring the second one. So you're saying only when they bring all of the witnesses they could bring that it would have this effect? I mean, I just don't know where you're at. Well, I guess what I'm suggesting is if the state's going to put witnesses on, whether they're going to put on one witness, three witnesses, or whatever, as soon as they provide witnesses, then it should have a preclusive effect, is what I'm suggesting. Because it seems to me, and I've done plenty of trials and hearings, very rarely is the state calling every single officer that was there on the scene for a DUI case. Usually the only people being called are the arresting officer and the breath operator, if there is one. That's what I usually see. So looking at, well, if there is five officers on the scene, are they all going to get called for the DUI case? I can tell you as a practitioner, I would love that to happen, because more than likely than not, there's going to be conflicting testimony, which helps me at trial. So it seems to me that if the court gives a preclusive effect, well, then the defense also cannot go, well, I can't file a motion to express because I lost at the reasonable ground stage. So the only thing that the defense can do is go right to trial or look at doing a plea. So I think from either way you look at it, it provides judicial efficiency, expediency, and we can explain it to the people a lot easier that way. Thank you. Thank you. Mr. Benitovic, good morning. Good morning, Your Honor. Actually, good afternoon. Also it is. With respect to this matter of collateral estoppel, as counsel has pointed out, the Illinois Supreme Court has pretty much, if you will, addressed this issue on both sides. And since I say both sides, this collateral estoppel issue, it can cut both ways. In the sense of, in this particular case, the defendant had a statutory suspension hearing, had his petition to rescind granted, the court found no reasonable ground. Why is that applied, and do you why? The contrary would be true also, because there's a case here in which the state wanted to apply a finding that there was reasonable ground in a statutory summary suspension, and the petition to rescind was denied. They wanted to apply it in this other case, the malicious prosecution case of Hurlburt v. Charles. And the Supreme Court said no. They said basically it cuts both ways. If we're not going to allow the defendant to do this, we're not going to allow the state to do this. The thing is, the reason why is, I think is best articulated in the People v. Moore case, which is the Illinois Supreme Court. That was a DUI prosecution. And in that case, the trial judge suppressed a breathalyzer test, because claiming that, relying upon a finding that was made, a ruling that was made, and a petition to rescind the statutory summary suspension, claiming that that acted as collateral estoppel, therefore the state was to stop, therefore we're going to take and throw out the breathalyzer. The Illinois Supreme Court reversed. And in that case, they specifically said that even though the statutory summary suspension hearing in that case, even though it provided a full and fair opportunity in that hearing to decide that issue in that hearing, they still said collateral estoppel does not apply in the criminal case. And they explained why. And what they said was, if collateral estoppel were to be given effect, the state would find it necessary to treat a suspension as an integral part of a criminal trial rather than as an administrative device at the driver's disposal. The decision rested on the difference between the nature of the statutory summary suspension, is what the Supreme Court focused on in my opinion. And that is important because counsel here says, well, you know, we have collateral estoppel. We don't have the state just relying upon a report. We have them bringing a testimony. Well, let's take a look at that. What happened in this case at the summary suspension? Did the state put on the evidence? Did the state call the trooper? Defendant called the trooper. Defendant put the evidence on. Defendant, with all due respect, made this somewhat into a semi-discovery type case. In attacking this. And I think what the Supreme Court has tried to do is, they've tried to give meaning to statutory summary suspension, meaning to the fact that it is basically an administrative hearing conducted before a court, simply on behalf of the Secretary of State, to determine whether or not a person's license should be suspended because they refused to take a breathalyzer test. There are certain issues that are decided in that case, in that particular scenario, and that's that. It has nothing to do with whether or not the defendant was actually driving under the influence of alcohol at the time, which is what the criminal trial actually addresses. So I think when you take a look at the totality of the Supreme Court decisions in this case, and how they try to, they separate out the summary suspension and its purpose and what the purpose is for a criminal trial. They try to give meaning to both of those. They don't want to conflate them into one particular proceeding. And so that being the case, that is the reason why, even in cases, even in cases, and most of the cases, by the way, that I have cited, they have had not just reports, they have been full summary suspension hearings where evidence has been taken. And in those cases, the courts have said, collateral estoppel does not apply. So I think that based on the case law and based on the rationale, collateral estoppel in this particular situation was promptly refused and does not apply. Now, with respect to the issue, nonetheless, of whether or not the motion to suppress the evidence should have been granted, just based, if you will, based on the stipulated evidence that happened at the statutory summary suspension proceedings, the fact of the matter remains that there was adequate evidence here to establish, okay, that the motion to suppress was promptly denied. I mean, in this case, we have a one-car accident involving this vehicle and a guardrail. When the trooper gets there, he explains the guardrail is not just damaged. The guardrail is out of its post partially, partially blocking the southbound I-55, or excuse me, how would you say that, off of Interstate 355, the southbound exit ramp to I-55. It's in the roadway. That's the only thing that is in the roadway when he gets there. It's the only debris that is there. And he comes across the defendant changing a flat tire. He's responding to a report of an accident. He just doesn't come upon this by accident. He's responding to an accident. He gets there. He asks the defendant, do you need medical care? No. He engages in a conversation. He detects the strong odor of alcohol. He notices the bloodshot watery eyes. And basically at that point, because of the fact that he asked the defendant what happened, the defendant at that point can't even tell him what happened. I don't know what happened. I struck something. I don't know what it was. Well, if he didn't strike the guardrail and he struck something in the roadway, you would certainly think he would have told him what it was that he saw in the roadway. But he didn't know what happened. What was the damage to the car? From what they say from the testimony, the damage to the car was to the passenger side. And the guardrail was on the driver's side. And how much damage was there? I have no idea. He was changing a tire. It was a flat tire. Only damage? Again, from what the record shows, from what I can gather from the record, apparently there must have been some sort of damage to the vehicle because the trooper testified that the vehicle was red and there was red paint on the guardrail, which is what led the trooper to conclude that the vehicle had been involved with the guardrail somehow. And so you take the totality of everything here, what goes on, and what the trooper saw, what he observed, in terms of trying to take and say that, and even on a motion to suppress the evidence here, it's like I think that when you look at the totality of what's there and then you add into that the field sobriety test, which at this particular point, considering the accident, considering the lack of any reason for the accident, what happened, considering the alcohol, considering other evidence of potential signs of intoxication, for the officer to do the field sobriety test is reasonable. He's going to have a reasonable suspicion because that is all he needs for the field sobriety test. He doesn't need probable cause. As far as the field sobriety tests are concerned, I'm just going to let the DVD speak for itself. The fact that the officer can't necessarily testify from memory weeks or months later as to exactly what step he basically took off the line or when exactly he used his arms, that is answered by the DVD. And that is clearly there. You take also into account when the officer is talking to the defendant, he asks him if he's been drinking. He admits to drinking. He admits to taking basically and starting with a quart of wine and then had five bottles of beer. Now, he claims he did this between the hours of 4 o'clock and the afternoon of 10. Yet, when the officer asked him specifically, and it is very clear on the DVD, when he asked him specifically, well, when was the last time you had a drink? And the defendant says, within the last hour, with respect to the last hour in terms of when this accident occurred or when the officer was there at the time they were talking. So we have a little bit of discrepancy as to when the last time this particular defendant, if you will, drank something. Counsel makes the comment that he's been up for 22 hours. Well, he's up for 22 hours and he's basically helped polish off a quart of wine and he's also had five beers. I dare say that I would certainly think that the effects of the alcohol would have a drastic ability combined with potential lack of sleep if we accept the truth of the matter that the defendant has said, that that's going to affect his ability to drive as well. The alcohol is going to have probably a morbid impact on his ability to properly drive a car. So when we take a look at the tally of this evidence, basically the motion to suppress whatever evidence the defendant was trying to suppress, because he can't suppress the field sobriety test, he can't suppress what the officer saw, he can't suppress the accident, he can't suppress the tire, he can't suppress any of the statements, it's kind of difficult to figure out exactly what evidence the defendant is trying to get suppressed here such that it would have such an impact that the state would not be able to prosecute, I guess is what I'm looking at. So in this particular case, based on this tally of the facts, the trial judge properly denied the motion to suppress. Now basically, without reiterating everything, if you take all that evidence again, and then what you do is you simply add the facts, and I'm not even relying upon the fact that he refused a breathalyzer test. But in cross-examination, when asked about what happened, this is what the defendant testified. When I got off at 355 to I-55, I turned wide, and the truck slid, and the car hit the ramp, and kind of rebounded. When it came back out and whiplashed out, that's when the other tire or the tire punched. That's the defendant's testimony as to what happened. Now, if we take the words literally, just what they are, it's hard to figure out exactly what he's trying to take and say. There's a couple of interpretations, and I think one simply is, he basically was driving too fast for our conditions, or whatever, came up on the ramp, slid off, hit the guardrail somehow, and basically ended up, when he came off, that's when his tire either ran over the guardrail, or somehow it basically, that's when he got the flat tire. Basically, what the defendant here is describing is an accident of some nature, with something. And so, when you take a look at the fatality of this, when you take a look at the fact that the weather was clear, the pavement was dry, there was no other debris on the road whatsoever, other than the guardrail, take everything else into account, with respect to the defendant, with respect to his demeanor, with respect to his drinking, everything else, basically, there's more than ample evidence here to sustain the trial judge's factual findings that the defendant was driving under the influence at the time. And because we have that finding, that finding is preserved to the conclusion that the fatality of the evidence is looked at, basically, in the best light for the state. Because the trial judge made the credibility determination, saw the witnesses, and made his assessment. And so, in this particular case, the fact that the defendant can offer, well, there's a language barrier, and he was tired and sleepy, those are all things that were presented to this prior fact as well. Those are all things that were rejected by this prior fact. The fact that the defendant presents a potential possible other explanations, those explanations do not raise a reasonable doubt, nor do they take and turn around and make any kind of, if you will, formal assault on the fatality of the evidence. Thank you. So, under the fatality of circumstances, considering all of the evidence, the trial judge correctly denied the motion to suppress, correctly refused to apply collateral estoppel, and also correctly determined that this defendant was driving under the influence at the time that his vehicle came in contact with the guardrail. As a result, we would ask this court to affirm the defendant's DUI conviction. If there were any questions about anything that I've happened to say, we'd be more than happy to try to respond. Thank you very much. Thank you. Mr. Munoz, any rebuttal? Yes. Although the State is suggesting that without the State presenting evidence, regarding the collateral estoppel issue, without the State presenting evidence that we can't give preclusive effect to that, I think it's faulty, because the State has an opportunity to cross-examine their officer with the police reports in hand is what they usually do. Secondly, they have the opportunity to present their own evidence after the defense or petitioner rests. And in our case, they did. They did cross-examine the officer. The record is complete with the State doing that, and they're doing it on a normal cross-examination type of fashion. And did they have the opportunity to present further witnesses? Absolutely. And, in fact, I believe it's on the transcript where Judge Rickman even tells the State, well, you're ready to present your evidence if I deny the petition when we come back on September 20th. They didn't. So the State has plenty of opportunity to present witnesses, which is why we suggest that if the sworn reports were disused, there should be no preclusive effect. I would have no disagreement with that. And I think that would make the legislative effect for having swift hearings meaningful. And if there are witnesses, then it is preclusive effect because, again, it provides for judicial efficiency, and I think those hearings are still swift because, as the Court well knows, the Circuit Courts are certainly giving precedence to these type of hearings so they can occur within the proper time frame in the 30 days. Next, as far as the motion to suppress, our prayer for relief on the motion to suppress suggests what we're asking the Court to suppress, which is essentially any evidence from the officer of what he witnessed during the investigation, as well as any photographs, video recordings of the stop and of the investigation, as well as the breath test of any later and any statements of the defendant. So the prayer for relief suggests what we are asking to suppress. So if granted, the State only would have had a fact of somebody on the side of the road fixing a tire. That's it. So that's what would have been left for the evidence. It would not have been anything else regarding the officer's investigation regarding the DUI. Lastly, as far as the field survival tests are concerned, when we're talking about the DUI trial, the details are important. Without those details of when the defendant stepped off the line, whether he stepped off the line, when he used his hand, raised his arms, whether he was swaying or not swaying, that makes a big difference because if he steps off the line once versus 18 times, you would think, well, that's one person. One mistake, not a big deal. Eighteen mistakes, okay, that's kind of a big deal. And on the one-leg stand test, that is a tough test. The officer cannot tell us how many times the foot went down. He cannot tell us anything about that test other than he put his foot down a few times and he swayed. He wasn't hopping around. He wasn't stumbling around with that test. And the client was actually able to do the test within the 30 seconds the officer stated. So I would suggest to the court that's essentially a pass. And the defendant testified that he had four to five beers between 4 o'clock and 10 o'clock. And whether or not that's a person under the influence of alcohol, I don't believe he ever testified. And there was no evidence that there was any wine consumed. And I also don't believe he testified that he had just finished drinking an hour before the officer got there. I believe the defendant testified that he stopped drinking for an hour before he left the party he was at, which was several hours away, and had been driving for hours. In any case, in this case, it was suggested there was not an accident. And the client's description of how he got onto the exit ramp of I-55 to I-55 was suggesting a blowout. If you have a blowout, your car reacts in a certain way. And certainly it would feel like a rebound and then trying to control the vehicle. And certainly that could be from running over something. I think that is more rational here than anything else, considering the damage to the guardrail was on the left side, the damage to the vehicle was on the right. There is no accident caused by Mr. Estrella. Although the blowout certainly could have led to one, it did not. And I think that suggests that my client's mental and physical faculties were fine because he was able to control his vehicle, even with a blowout. So it suggests to the court that the state's evidence was not sufficient and we would ask the court to reverse the court's finding him guilty and reverse the denial of motion to suppress. Thank you. Thank you. We thank both of you for your arguments this morning and afternoon. We will take the matter under advisement and will issue a written decision as quickly as possible. The court will now stand in recess until 1.15.